1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11   JASON SMITH,

Plaintiff,

12

v.

13

14   SHAWN HATTON, et al.,

Defendants.

15
16
17

Case No. 17-04030 BLF (PR)

**ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 52

18        Plaintiff, a California inmate, filed a *pro se* civil rights complaint under 42 U.S.C. §

19   1983, against Defendants Warden Shawn Hatton, Investigative Services Unit ("ISU")

20   Lieutenant V. Khan, ISU Sergeant S. Kelley, ISU Correctional Officer Z. Brown, ISU

21   Correctional Officer S. Patterson, ISU Sergeant S. Rodriguez, and ISU Correctional

22   Officer R. Salas.  Defendants are prison officials at the Correctional Training Facility

23   ("CTF").  Dkt. Nos. 1, 22.  Defendants have filed a motion to dismiss and motion for

24   summary judgment.  Dkt. No 52.  Plaintiff has filed an opposition, dkt. no. 54, and

25   Defendants have filed a reply, dkt. no. 55.

26

27

28

1

For the reasons discussed below, Defendants' motion to dismiss and motion for summary judgment pertaining to the Eighth Amendment claim are **GRANTED**.[1]

## FACTUAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiff. They are undisputed unless otherwise indicated.

On June 29, 2016, the ISU was conducting cell searches after having received information that Plaintiff and his cellmate possessed cell phones. Dkt. No. 52-1 ("Brown Decl.") ¶ 4; Dkt. No. 52-6 ("Salas Decl.") ¶ 4. Plaintiff and Plaintiff's cellmate were pulled out of their cell by Defendants Brown, Patterson, Rodriguez, and Salas, all of whom were officers in the ISU. Dkt. No. 1 ("Compl.") at 7 ¶ 6; Dkt. No. 22. Defendant Salas performed a clothed body search of Plaintiff and Plaintiff's cellmate by conducting a pat-down and using a handheld metal detector. Brown Decl. ¶ 5; Salas Decl. ¶ 4. No contraband was detected. Brown Decl. ¶ 5.

Defendants Brown, Patterson, Rodriguez, and Salas ordered plaintiff to submit to an unclothed body search in the first tier shower area.[2] Compl. at 7 ¶ 6; Dkt. No. 22. Plaintiff claims that he was subject to this unclothed body search after he had made a statement to Defendant Patterson that "her snitches were lying to her." Dkt. No. 54 ("Opp.") at 7.

The shower area is typically where unclothed body searches are conducted because it is more spacious than an inmate's cell and other inmates do not have a direct view into

---

[1] In a separate but concurrently filed order, the Court directs Defendants to file a motion for summary judgment or other dispositive motion on Plaintiff's Fourth and Fourteenth Amendment claims.

[2] Plaintiff initially alleged that Defendants also ordered Plaintiff to submit to a cavity search. Compl. at 7 ¶ 6. However, Defendants clarify that Plaintiff was not subject to a cavity search, which would have had to have been conducted in a medical setting under the supervision of a doctor. Brown. Decl. ¶ 9. Plaintiff does not dispute this clarification.

Case No. 17-04030 BLF (PR)
ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

2

the shower area as they would another inmate's cell. Brown Decl. ¶ 7. After Plaintiff removed all of his clothing, Defendant Brown visually inspected Plaintiff's hair, mouth, armpits, arms, palms, and feet. *Id.* ¶ 8. Plaintiff was also directed to bend forward at the waist, spread his buttocks, and cough several times to ensure that Plaintiff was not hiding any contraband in his anal cavity. *Id.* At no time during the unclothed body search did Defendants physically touch Plaintiff. *Id.* ¶ 9. The unclothed body search took more than, but was approximately, one minute. *Id.* ¶ 8; Opp. at 7. The unclothed body search revealed no contraband. Salas Decl. ¶ 5.

Defendant Brown laughed throughout the unclothed body search. Compl. at 7 ¶ 6. At the end of the search, Defendant Patterson, who is female and was also present during the search, took several sexually suggestive partially nude photographs of Plaintiff and Plaintiff's cellmate.[3] *Id.* While she was taking the pictures, she made lewd comments toward Plaintiff. Opp. at 5. During this process, other inmates were walking by the shower area and were able to observe the whole incident. Compl. at 7-8 ¶ 6. That same day, Defendants Brown and Salas searched Plaintiff's cell and discovered two cell phones, one charger, and one altered charger.[4] Brown Decl. ¶ 12; Salas Decl. ¶ 8.

On July 13, 2016, Plaintiff informed non-Defendant Lt. Padilla about what had occurred, and an investigation commenced. Compl. at 8 ¶ 6. Plaintiff submitted an administrative grievance complaining about the events that occurred on June 29, 2016. Dkt. No. 52-3 ("Khan Decl."), Ex. A. On July 25, 2016, Defendant Khan interviewed Plaintiff in connection with his administrative grievance at the second level of review.

---

[3] Defendants assert that Defendant Patterson entered the shower area only after Plaintiff had put his underwear briefs on, and photographed Plaintiff. Brown Decl. ¶ 11; Salas Decl. ¶ 6. Nonetheless, at this stage of the proceedings, the Court must view Plaintiff's non-speculative factual assertions as true. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam).

[4] Plaintiff points out that Defendant Brown has provided conflicting evidence as to whether the cell search occurred prior to or after the unclothed body search. Opp. at 13.

Khan Decl. ¶ 6. After Defendant Khan's investigation into the matters raised in Plaintiff's grievance, Defendant Khan concluded that there was no evidence of sexual misconduct, harassment, or humiliation during the unclothed body search. *Id.* ¶ 12.

When Plaintiff filed his July 13, 2016 administrative grievance, Plaintiff was identified as a possible victim of staff sexual misconduct. Dkt. No. 52-2 ("Kelley Decl.") ¶ 6. Defendant Kelley conducted a Prison Rape Elimination Act ("PREA") review to investigate Plaintiff's claims of staff sexual misconduct. *Id.* After Defendant Kelley's investigation, Defendant Kelley determined that Plaintiff's allegation of staff sexual misconduct was unsubstantiated and closed the investigation. Kelley Decl., Ex. A.

Based on the above facts, Plaintiff alleges that Defendants Brown, Patterson, Rodriguez, and Salas subjected Plaintiff to cruel and unusual sexual invasion of privacy and sexual misconduct. Compl. at 7 ¶ 6; Dkt. No. 22. Plaintiff also alleges that Defendants Khan and Kelley failed to identify some of the officers involved in the incident and failed to interview any witnesses whose names Plaintiff provided. Compl. at 8 ¶ 6; Opp. at 5. Finally, Plaintiff alleges Warden Hatton "fail[ed] to correct this treatment of inmates that have led to a violation of basi[c] standards" by not prohibiting female correctional officers from taking partially nude photographs of male inmates. Compl. at 8 ¶ 6. The Court found that Plaintiff stated a cognizable claim that all Defendants violated Plaintiff's rights under the Eighth Amendment.


## DISCUSSION

Defendants have filed a motion to dismiss and motion for summary judgment. In the motion to dismiss, Defendants argue, *inter alia*, that Plaintiff's claims against Defendants in their official capacities are barred and that Plaintiff has failed to state a cognizable claim for relief as to Defendants Khan, Kelley, and Hatton. Defendants also

move for summary judgment on the merits and based on qualified immunity.

Based on a review of the record, and for the reasons stated below, the Court grants Defendants' motion to dismiss the claims against all Defendants in their official capacities and grants Defendants' motion to dismiss the Eighth Amendment claim against Defendants Khan, Kelley, and Hatton for failure to state a claim.[5] The Court also grants Defendants Brown, Patterson, Salas, and Rodriguez's motion for summary judgment on the merits and based on qualified immunity related to the Eighth Amendment claim.[6]

## MOTION TO DISMISS

I.    Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can

---

[5] Because the Court grants Defendants' motion to dismiss on these two grounds, the Court finds it unnecessary to address Defendants' additional grounds for dismissal at this time.

[6] The Court notes that while Defendants' motion states that all Defendants move for summary judgment, dkt. no. 52 at 9, 27, the Court is dismissing Defendants Khan, Kelley, and Hatton based on Defendants' motion to dismiss.  Thus, the Court will limit its discussion of Defendants' motion for summary judgment to Defendants Brown, Patterson, Salas, and Rodriguez.

Case No. 17-04030 BLF (PR)
ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

5

provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In the Ninth Circuit, courts "construe *pro se* filings liberally when evaluating them under *Iqbal*. However, a court will not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the Plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

II.    Analysis

   A.  Official Capacity Claim

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. Compl. at 8 ¶ 7.

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.*

Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacities. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities). Defendants' motion to dismiss Plaintiff's claims against Defendants in their official capacities is GRANTED, and those claims are DISMISSED with prejudice. Because it is absolutely clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend.

B. Failure to state a claim

The U.S. Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment only if two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

A prisoner may state an Eighth Amendment claim under Section 1983 for sexual harassment if the alleged sexual harassment was sufficiently harmful, i.e., a departure from "the evolving standards of decency that mark the progress of a maturing society," and the defendant acted with intent to harm the prisoner. *See Thomas v. District of Columbia*, 887 F. Supp. 1, 3-4 (D.D.C. 1995) (citing *Hudson v. McMillian*, 503 U.S. 1, 6, 8 (1992)) (internal quotations and citation omitted). Sexual assault, coercion, and harassment certainly may violate contemporary standards of decency and cause physical and

psychological harm. *See Jordan v. Gardner*, 986 F.2d 1521, 1525-31 (9th Cir. 1993) (en banc); *Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia*, 877 F. Supp. 634, 664-67 (D.D.C. 1994).

The Eighth Amendment's prohibition against cruel and unusual punishment may also be violated by certain body searches. *See Jordan*, 986 F.2d at 1525-31 (emphasizing many female inmates' history of abuse, "psychological differences between men and women," and intrusive physical nature of search); *cf. Byrd v. Maricopa County Bd. of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017) (pretrial detainee's allegation that he alerted prison officials of his discomfort with defendants' policy of permitting female guards to regularly view his bathroom and shower use from 4-5 feet away because of detainee's past sexual abuse was sufficient to state a claim for relief against cruel and unusual punishment).

Here, Plaintiff's sole allegation against Defendants Kelley and Kahn is that they failed to properly investigate Plaintiff's accusations against Defendants Brown, Patterson, Rodriguez, and Salas. Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013).

Here, Plaintiff does not allege that Defendant Kelley or Khan caused or was involved in the body or cavity search, nor that Defendant Kelley or Khan committed sexual harassment against him. In fact, Plaintiff's facts make clear that Defendants Kelley and Khan were only involved as investigators into the circumstances of the body search after the search had already occurred. Therefore, Plaintiff has not stated a cognizable Eighth Amendment claim against Defendants Kelley and Khan.

In addition, there is no constitutional right to a prison administrative appeal or

grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (order) ("There is no legitimate claim of entitlement to a grievance procedure."). There is also no right to a response or any particular action. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance").

Accordingly, Defendants' motion to dismiss the claim against Defendants Kelley and Khan is GRANTED. While leave to amend should generally be given to a *pro se* plaintiff, leave is not required when it is absolutely clear that the deficiencies could not be overcome by amendment. *See Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). Here, based on these facts, no amendment could overcome the lack of a legal basis for liability against Defendants Kelley and Khan. Plaintiff's claim against Defendants Kelley and Khan are DISMISSED without leave to amend.

With respect to Defendant Hatton, Plaintiff alleges only that Defendant Hatton failed to prohibit female correctional officers from taking partially nude photographs of male inmates. Compl. at 8 ¶ 6. Again, Plaintiff does not allege that Defendant Hatton was involved in the body and cavity search, nor that Defendant Hatton engaged in sexual harassment against him. Based on these facts, Plaintiff has not stated a cognizable Eighth Amendment claim against Defendant Hatton. Defendants' motion to dismiss the claim against Defendant Hatton is GRANTED.

However, a supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). A supervisor may also be liable if there is evidence of "a policy so deficient that the policy itself is a repudiation of constitutional

rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

It is insufficient for a plaintiff only to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a *specific* policy" or "a *specific* event" implemented or instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original). Here, Plaintiff has not proffered any facts from which it can be inferred that Defendant Hatton knew about any constitutional violation, or that Defendant Hatton created a specific policy or procedure which led to the alleged violation.

It is not beyond doubt, however, that Plaintiff could provide a set of facts in support of a claim against Defendant Hatton which would entitle Plaintiff to relief. Thus, the claim against Defendant Hatton is dismissed with leave to amend to allow Plaintiff an opportunity to provide more facts to support a cognizable claim for relief against Defendant Hatton.

## MOTION FOR SUMMARY JUDGMENT

I.    Standard of review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary

judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the nonmoving party

fails to do so, the district court may properly grant summary judgment in favor of the

moving party.  *See id.*

II.    Merits

Plaintiff alleges that Defendants Brown, Patterson, Rodriguez, and Salas sexually

assaulted or harassed him by conducting an unclothed body search of Plaintiff.  According

to Plaintiff, Defendants Brown, Patterson, Rodriguez, and Salas ridiculed Plaintiff and

deliberately embarrassed and humiliated him.  Opp. at 10.  Plaintiff also argues that

Defendant Patterson, who was female, was present during the unclothed body search and

took partially nude photographs of Plaintiff.  Plaintiff claims that Defendant Patterson had

unrestricted views of Plaintiff's naked body in the shower at close range for an extended

period of time in an effort to punish and humiliate him.  Opp. at 10.  Based on these

allegations, the Court found that Plaintiff stated a cognizable claim that Defendants

violated Plaintiff's Eighth Amendment to be free from cruel and unusual punishment.

Courts considering a prisoner's Eighth Amendment claim must ask: 1) if the

officials acted with a sufficiently culpable state of mind, and 2) if the alleged wrongdoing

was objectively harmful enough to establish a constitutional violation.  *Hudson v.

McMillian*, 503 U.S. 1, 8 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In order to violate the Eighth Amendment's objective component based on sexual

harassment, the evidence must show that the challenged conduct was egregious, pervasive,

and/or widespread.  *Compare Jordan*, 986 F.2d at 1525-31 (prison policy requiring male

guards to conduct body searches on female prisoners inflicted pain sufficient to violate the

Eighth Amendment) *with Green v. Thompson*, No. C 10-5721 WHA (PR), 2013 WL

550621, *2 (N.D. Cal. Feb. 12, 2013) (granting defendants' motion for summary judgment

on prisoner's Eighth Amendment claim that over the course of three weeks and between

one and three times, prison guard grabbed prisoner's buttocks and testicles, and made sexual comments to prisoner because it did not rise to the level of constitutional violation). In comparison, mere verbal sexual harassment does not necessarily amount to an Eighth Amendment violation. *Austin v. Williams*, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (upholding summary judgment dismissal of Eighth Amendment claim where prison guard exposed himself to prisoner in elevated, glass-enclosed control booth for no more than 30-40 seconds).

Here, there is an absence of evidence that the harassment Plaintiff suffered was egregious, pervasive, or widespread. It is undisputed that no Defendant physically touched Plaintiff during the unclothed body search or while Defendant Patterson took photographs of Plaintiff. Defendants' alleged conduct – laughing and making rude comments – simply does not rise to the level of pain sufficient to violate the objective component of the Eighth Amendment. *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112-13 (9th Cir. 2012) (affirming dismissal of Eighth Amendment claim alleging that guard humiliated inmate when the guard approached the inmate while the inmate was on the toilet, rubbed the inmate's thigh, "began smiling in a sexual [way], and left the cell laughing"); *Austin*, 367 F.3d at 1171-72 (concluding that claim that a guard exposed himself to inmate while making crude comments was not sufficiently serious to satisfy an Eighth Amendment violation because it was an isolated incident that was short in duration and there was no allegation of physical contact between the guard and the inmate); *Somers v. Thurman*, 109 F.3d 614, 622-23 (9th Cir. 1997) (holding that female officials' observation of unclothed male inmate, accompanied by "gawking, pointing, and joking" but without physical contact, was not sufficient to meet "objectively harmful" prong of Eighth Amendment test stating, "[t]o hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth

Amendment test and render it absurd").

In addition, the Court has viewed the photographs taken by Defendant Patterson. Galvan Decl., Ex. A. The exhibit includes the only photographs the ISU took of Plaintiff on June 29, 2016, following the unclothed body search. *Id.* ¶¶ 3-4. A review of the photographs reveals that in all of the photographs except for the ones depicting only the upper portions of Plaintiff's body, it is clear that Plaintiff is wearing boxer shorts. *Id.*, Ex. A. None of the pictures show any part of Plaintiff's genitalia. To the extent Plaintiff argues that the taking of photographs of Plaintiff in his boxer shorts violated the Eighth Amendment, the Court finds that there is an absence of evidence that the taking of photographs was sufficiently harmful such that it violated contemporary standards of decency. *See, e.g.*, *Goodrick v. Sandy*, No. 1:10-cv-00603-EJL, 2013 WL 5409653, * 10 (D. Idaho Sept. 25, 2013) (granting defendants' motion for summary judgment on prisoner's claim that he was subjected to strip search and photographing of his naked body because claim did not satisfy objective or subjective components of Eighth Amendment), *aff'd by* No. 13-35923, 616 Fed. Appx. 222 (9th Cir. Sept. 4, 2015) (unpublished memorandum disposition)

Finally, by itself, "[c]ross-gender searches cannot be called inhumane and therefore do[] not fall below the floor set by the objective component of the [E]ighth [A]mendment." *Somers v. Thurman*, 109 F.3d 614, 623 (9th Cir. 1997) (quoting *Johnson v. Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995)). In contrast, the Ninth Circuit has upheld a district court's finding that there was sufficient "infliction of pain" to trigger the Eighth Amendment in a cross-gender search case with exacerbating circumstances. *See Jordan*, 986 F.2d at 1525-27. In *Jordan*, the Ninth Circuit relied upon several facts that, combined with the policy of a clothed pat down search, was sufficient to support a finding of "infliction of pain" capable of satisfying the objective component of the Eighth

Amendment. Specifically, the evidence in *Jordan* showed that female inmates were forced to undergo clothed, intrusive, pat down searches conducted by male prison officials; there were physical, emotional, and psychological differences between men and women; and some of the women subject to search were women who had been physically and sexually abused in the past. In sum, the Ninth Circuit recognized that the evidence in *Jordan* showed that the female inmates had certain vulnerabilities that would cause a cross-gender pat down search to exacerbate pre-existing mental conditions which could cause severe psychological trauma. *Id.* at 1525-27.

Here, there is an absence of evidence anywhere close to what was shown in *Jordan*. Viewing the facts in the light most favorable to Plaintiff, the June 29, 2016 incident was the only time Defendants Brown, Patterson, Rodriguez, and Salas ordered Plaintiff to undergo an unclothed body search. The search took approximately one minute, though Plaintiff asserts it was longer than one minute. There is no evidence that Plaintiff suffered from some pre-existing condition that would have been exacerbated by the unclothed body search. There is also no evidence that the unclothed body search involved any physical contact.

For these reasons, there is an absence of evidence that Plaintiff suffered an objectively, sufficiently serious harm to violate the Eighth Amendment. The Court grants Defendants' motion for summary judgment on the merits.

IV.     <u>Qualified Immunity</u>

Alternatively, the defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual

1    constitutional right and whether such right was clearly established such that it would be

2    clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

3    *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

4         Courts are not required to address the two qualified immunity issues in any

5    particular order, and instead may "exercise their sound discretion in deciding which of the

6    two prongs of the qualified immunity analysis should be addressed first in light of the

7    circumstances in the particular case at hand."  *Id.*  "[U]nder either prong, courts may not

8    resolve genuine disputes of fact in favor of the party seeking summary judgment," and

9    must, as in other cases, view the evidence in the light most favorable to the non-movant.

10   *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

11        With respect to the second prong of the qualified immunity analysis, the U.S.

12   Supreme Court has held that "[a]n officer cannot be said to have violated a clearly

13   established right unless the right's contours were sufficiently definite that any reasonable

14   official in his shoes would have understood that he was violating it, meaning that existing

15   precedent . . . placed the statutory or constitutional question beyond debate."  *City and*

16   *County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in

17   original) (internal quotation marks omitted).  This is an "exacting standard" which "gives

18   government officials breathing room to make reasonable but mistaken judgments by

19   protecting all but the plainly incompetent or those who knowingly violate the law."  *Id.*

20   (internal quotation marks omitted).

21        Although it is not necessary that a prior decision rule "the very action in question"

22   unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640

23   (1987), the U.S. Supreme Court has repeatedly cautioned that courts should not define

24   clearly established law at a high level of generality, *see White v. Pauly*, 137 S. Ct. 548, 552

25   (2017) (per curiam).  *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016)

26

27

28

1   (plaintiff need not find case with identical facts, but the further afield existing precedent

2   lies the more likely that official's acts fall within vast zone of conduct that is

3   constitutional).

4   Thus, this Court must decide whether a prisoner's right to be free from cruel and

5   unusual punishment was clearly established such that a reasonable official would have

6   understood that conducting an unclothed body search of a male prisoner without physical

7   contact and taking photographs of the prisoner in his undergarments violated the Eighth

8   Amendment.

9   A court determining whether a right was clearly established looks to "[U.S.]

10  Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community*

11  *House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010). The plaintiff bears the burden of

12  proving the existence of a "clearly established" right at the time of the allegedly

13  impermissible conduct. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir.

14  1992). Here, Plaintiff has not provided any case law proving the existence of a "clearly

15  established" right.

16  The Court has conducted a search for cases decided prior to June 29, 2016, on the

17  question of whether prison officials violate the Eighth Amendment when they conduct an

18  unclothed body search – in cross gender and non-cross gender situations – of a male

19  prisoner without physical contact and/or take photographs of the prisoner in his

20  undergarments. Because the U.S. Supreme Court has not definitively spoken on this issue,

21  this court must look to existing Ninth Circuit law.

22  In 1985, the Ninth Circuit decided *Grummett v. Rushen*, 779 F.2d 491 (9th Cir.

23  1985). In that case, a group of male prisoners filed suit, alleging that the prison's policy of

24  allowing female correctional officers to view male inmates in various states of partial or

25  total nudity while dressing, showering, during strip searches, or using the bathroom

26

27  Case No. 17-04030 BLF (PR)
    ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

28

facilities violated, *inter alia*, their Eighth Amendment right. *Id.* at 492-93. The Ninth Circuit implied that the prisoners did not provide sufficient evidence of pain to support an Eighth Amendment claim. It stated that because that the prisoners' allegation did not refer to "the type of shocking and barbarous treatment protected against by the eighth amendment," the Ninth Circuit would only discuss the inmates' allegations under the Fourth and Fourteenth Amendments. *Id.* at 493 n.1.

In *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (en banc), the only Ninth Circuit case that has found cross-gender searches to be unconstitutional under the Eighth Amendment, the Ninth Circuit held that a prison policy that required male guards to conduct random, suspicionless, clothed body search of female prisoners was cruel and unusual. *Id.* at 1522-23. In *Jordan*, the searches involved physical and intrusive tactile search of the female prisoners' crotch and breast areas. *Id.* at 1523. The Ninth Circuit found that, in light of the nature of the searches, the evidence that many of the inmates had histories of sexual abuse by men, and the evidence showing that the search procedures caused more than a momentary discomfort, the search policy was sufficient to establish "infliction of pain" as contemplated by the Eighth Amendment. *Id.* at 1526.

Finally, in *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), the Ninth Circuit was faced with whether female prison officials were entitled to qualified immunity where a male inmate alleged that female prison officials conducting visual body cavity searches and watching male inmates showering naked violated the Eighth Amendment. *Id.* at 615-16. The Ninth Circuit concluded that the inmate's allegations did not rise to the level of an Eighth Amendment violation. "Cross-gender searches cannot be called inhumane and therefore do[] not fall below the floor set by the objective component of the [E]ighth [A]mendment." *Id.* at 623 (internal quotation marks omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against

society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (citing *McMillian*, 503 U.S. at 9) (internal quotations and citations omitted).

In addition, district courts within the Ninth Circuit have generally found no Eighth Amendment violation from a prisoner's claim that officials conducted an unclothed body search without physical contact or taken nude photographs. *See, e.g.*, *Dawson v. Beard*, No. Case No. 1:15-cv-01867 DLB, 2016 WL 1137029, *5 (E.D. Cal. March 23, 2016) (report and recommendation dismissing prisoner's Eighth Amendment claim that two unclothed body searches, one of which was in front of inmates and female officers, for failure to state a claim); *Wilson v. Soto*, Case No. CV 15-9546-PSG (JPR), 2016 WL 825194, *4-*5 (C.D. Cal. Jan. 21, 2016) (report and recommendation dismissing with leave to amend prisoner's claim that prison officials violated Eighth Amendment when prisoner was forced to strip naked and submit to a cavity search in the prison yard in front of inmates, female and male guards, and some guards pointed and laughed); *Goodrick*, 2013 WL 5409653, *10 (granting defendants' motion for summary judgment on prisoner's claim that he was subjected to strip search and photographing of his naked body because claim did not satisfy objective or subjective components of Eighth Amendment); *Carroll v. Read*, No. CV 10-6964-CJC (DTB), 2013 WL 1858866, * (C.D. Cal. Jan. 31, 2013) (report and recommendation dismissing for failure to state an Eighth Amendment claim prisoner's allegation that prison official conducted an unclothed body search on plaintiff, and ordered plaintiff to expose his buttocks to them two separate times because prisoner's claim showed nothing more than a minimal or momentary discomfort); *Blacher v. Johnson*, No. 1:12-cv-01159 GSA PC, 2012 WL 12906134, *2 (E.D. Cal. Sept. 7, 2012) (report and recommendation dismissing prisoner's Eighth Amendment claim that female correctional officers smirked or were condescending when prisoner was subjected to unclothed body

search).

Plaintiff's case appears to fall somewhere in between *Jordan* and *Somers/Grummet*. Had Plaintiff provided evidence that he had some pre-existing condition and that Defendants conducted unclothed body searches upon him frequently which resulted in some of kind of psychological trauma or other pain, Plaintiff's case might be closer to *Jordan*. Indeed, there is some measure of discomfort and embarrassment in submitting to an unclothed body search but the Court finds that the law was not clearly established in June 2016 that conducting an unclothed body search of a male prisoner without physical contact and taking photographs of the prisoner in his undergarments inflicted pain prohibited by the Eighth Amendment.

Accordingly, the Court finds that Defendants Brown, Patterson, Rodriguez, and Salas are entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. The claims against Defendants in their official capacities are DISMISSED with prejudice. The Eighth Amendment claim against Defendants Khan and Kelley is DISMISSED without leave to amend and with prejudice. The Eighth Amendment claim against Defendant Hatton is DISMISSED with leave to amend. If Plaintiff believes he can provide sufficient facts from which it can be inferred that Defendant Hatton is liable under Section 1983, Plaintiff must file an amendment to the complaint no later than **twenty-eight days** from the filing date of this order. If Plaintiff fails to do so, Defendant Hatton will remain dismissed and the dismissal will be without leave to amend and without further order from the Court.

The Court is providing Plaintiff an opportunity to file an amendment to the complaint rather than an amended complaint, so Plaintiff will only need to allege a claim

Case No. 17-04030 BLF (PR)
ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

against Defendant Hatton, and will not need to repeat the claim against the other Defendants. An amendment is read together with the complaint, whereas an amended complaint would supersede the complaint.

Defendants Brown, Patterson, Rodriguez, and Salas' motion for summary judgment on the Eighth Amendment claim is GRANTED on the merits and based on qualified immunity. The Eighth Amendment claim against Defendants Brown, Patterson, Rodriguez, and Salas is DISMISSED with prejudice.

By separate and concurrently filed order, the Court has reviewed the complaint and determined that it previously overlooked Plaintiff's Fourth and Fourteenth Amendment claims. *See* Order Directing Defendants to File Dispositive Motion or Notice Regarding Such Motion. Thus, the portion of this order granting Defendants' motion for summary judgment is limited to Plaintiff's Eighth Amendment claim.

**IT IS SO ORDERED.**

Dated: ___November 15, 2018___

BETH LABSON FREEMAN
United States District Judge