UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>SHAWN HATTON, et al.,<br><br>    Defendants. | Case No. 17-04030 BLF (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 71) |

Plaintiff, a California inmate, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against prison officials at the Correctional Training Facility ("CTF"). Defendants Warden Shawn Hatton, Investigative Services Unit ("ISU") Lieutenant V. Khan, ISU Sergeant S. Kelley, ISU Correctional Officer Z. Brown, ISU Correctional Officer S. Patterson, ISU Sergeant S. Rodriguez, and ISU Correctional Officer R. Salas filed a motion to dismiss and motion for summary judgment the Eighth Amendment claim against them, (Docket No. 52), which the Court granted.[1] (Docket No. 67.) Concurrently and in a

---

[1] In the same order, the Court granted Plaintiff leave to amend an Eighth Amendment claim against Defendant Hatton. (Docket No. 67 at 20.) When Plaintiff failed to do so in the time provided, the Court dismissed the Eighth Amendment claim against Defendant

1

separate order, the Court found the complaint stated cognizable claims under the Fourth and Fourteenth Amendments, and ordered Defendants Brown, Patterson, Rodriguez, and Salas to file a dispositive motion thereon. (Docket No. 66.) Defendants filed a motion to dismiss and motion for summary judgment. (Docket No. 71, hereinafter "Mot."[2]) Plaintiff filed an opposition, (Docket No. 75), along with a declaration and exhibits, (Docket Nos. 76, 77), and Defendants filed a reply[3], (Docket No. 79).

For the reasons discussed below, Defendants' motion to dismiss and motion for summary judgment is **GRANTED**.

## FACTUAL BACKGROUND[4]

After receiving information that Plaintiff and his cellmate might be in possession of cell phones, the Investigative Services Unit ("ISU") decided to conduct cell searches on June 29, 2016. (Brown Decl. ¶ 4; Salas Decl. ¶ 4.) Defendants Brown and Salas, both ISU officers, along with Defendant Sgt. Rodriguez arrived at Plaintiff's housing unit shortly after 6:00 a.m. on June 29, 2016. (*Id.*; Rodriguez Decl. ¶ 5.) ISU generally conducts cell searches this early in the morning to ensure that the housing units' operations are not overly disturbed, and this also being an ideal time to conduct searches of inmates as there is little traffic within the unit and thus more privacy. (*Id.*) Plaintiff and his cellmate were directed to exit the cell. (Brown Decl. ¶ 5; Salas Decl. ¶ 4.) Defendant Salas performed a

---

Hatton and terminated him from the action, along with Defendants Khan and Kelly. (Docket No. 70.)

[2] In support of their motion, Defendants rely on the declarations and exhibits filed with their previous summary judgment motion from the following: Defendant Z. Brown, (Docket No. 52-1), Defendant S. Patterson, (Docket No. 52-4), Defendant S. Rodriguez, (Docket No. 52-5), and Defendant R. Salas, (Docket No. 52-6).

[3] In their reply, Defendants raise numerous evidentiary objections to several of Plaintiff's assertions and documents submitted in opposition. (Reply at 7-15.) Where relevant, these objections are discussed in the body of this order.

[4] The following facts are undisputed unless otherwise indicated.

2

clothed body search of Plaintiff and his cellmate, which involved a pat-down and the use of a handheld metal detector. (*Id.*) No contraband was detected. (Brown Decl. ¶ 5.)

Defendant Brown was not convinced that Plaintiff was not concealing other contraband on his person because only items that protrude from the inmate's clothing would have been apparent and only metal items would be identified by the metal detector. (Brown Decl. ¶ 6.) As such, Defendants determined it was necessary to perform an unclothed body search to dispel any suspicion that Plaintiff might be hiding contraband on his person. (*Id.*; Rodriguez Decl. ¶ 11.) Unclothed body searches are performed with great frequency in prisons, both routinely and randomly, for the purpose of maintaining prison safety and security. (Rodriguez Decl. ¶ 10.) In this case, a search was indicated because there was information and evidence that Plaintiff was in possession of contraband. (*Id.*) Defendants Brown and Salas escorted Plaintiff to the housing unit's shower area on the first tier for the purpose of performing an unclothed body search; Defendant Rodriguez did not accompany them.[5] (Brown Decl. ¶ 6; Salas Decl. ¶ 4; Rodriguez Decl. ¶ 6.) According to Plaintiff, Defendant Patterson was also present at this time, and he asserts that he was subjected to an unclothed body search only after he had made a statement to Defendant Patterson that "her snitches were lying to her." (Smith Decl. ¶¶ 2, 4, 8, 16.)

The shower area is where unclothed body searches are routinely conducted because it is more spacious than an inmate's cell and other inmates do not have a direct view into the shower area as they would of a cell. (Brown Decl. ¶ 7.) According to Defendants, only Defendants Brown and Salas were present in the shower during the search. (*Id.* ¶ 10; Salas Decl. ¶ 7.) After Plaintiff removed all his clothing, Defendant Brown visually inspected Plaintiff's hair, mouth, armpits, arms, palms, and feet. (Brown Decl. ¶ 8.)

---

[5] Plaintiff initially alleged that Defendants also ordered Plaintiff to submit to a cavity search. (Compl. at 7.) However, Defendants clarify that Plaintiff was not subject to a cavity search, which would have had to have been conducted in a medical setting under the supervision of a doctor. (Brown. Decl. ¶ 9.) Plaintiff does not dispute this clarification.

3

Plaintiff was also directed to bend forward at the waist, spread his buttocks, and cough several times to ensure that Plaintiff was not hiding any contraband in his anal cavity. (*Id.*) The unclothed body search took approximately one minute. (*Id.* ¶ 8.) The unclothed body search was strictly visual, and at no time during the search did Defendants physically touch Plaintiff. (*Id.* ¶¶ 9, 10; Salas Decl. ¶ 9.) Defendants Brown and Salas also stood around Plaintiff while he disrobed, acting like a wall, blocking the shower area opening and making it nearly impossible for anyone outside or walking by the showers to observe the activity inside the shower. (Brown Decl. ¶ 10; Salas Decl. ¶ 7.) The unclothed body search revealed no contraband. (Salas Decl. ¶ 5.)

According to Defendants, Defendant Patterson, a female officer, was called to the inmate shower area while the strip search was being conducted inside the shower. (Patterson Decl. ¶ 8.) Defendant Patterson waited outside until after the unclothed body search was completed, unable to observe the actions inside while her colleagues were blocking the shower opening to provide Plaintiff privacy, and entered only after the other Defendants called her in. (*Id.* ¶¶ 8, 9; Brown Decl. ¶ 11; Salas Decl. ¶ 6.) Defendant Patterson is also an ISU officer who, at the time of the incident, held the position of Assistant Security Threat Group Investigator. (Patterson Decl. ¶ 4.) Part of Defendant Patterson's duties were investigating and documenting inmates' Security Threat Group ("STG") status. (*Id.*) STG refers to any group of offenders CTF reasonably believes poses a threat to the physical safety of other inmates and staff due to the very nature of the groups. (*Id.* ¶ 5.) Some of the groups at CTF include the Bloods, Crips, Mexican Mafia, Aryan Brotherhood, and Black Guerilla Family. (*Id.*) One of the indicia of STG membership is the use of gang tattoos. (*Id.* ¶ 6.) ISU officers take photographs of inmates and their tattoos to document their STG status. (*Id.*) For Defendant Patterson, this is an essential part of her job responsibilities as an investigator. (*Id.*) The photographs are for the sole internal use of ISU. (*Id.* ¶ 11.) When Defendant Patterson entered the showers,

Plaintiff was wearing boxer briefs and was not nude. (*Id.* ¶ 8.) She took photographs of Plaintiff's front side, back, profiles, as well as photographs of his hands, arms, and forearms where Plaintiff has tattoos. (*Id.* ¶ 12.) There were also close-ups of Plaintiff's tattoos. (*Id.*) The photographs show that Plaintiff was wearing white underwear briefs, and the only exposed areas of his body were his arms, legs, and torso. (*Id.*) Defendant Patterson did not touch Plaintiff while taking these photographs. (*Id.*) Defendants filed these photographs with the Court, under seal. (Galvan Decl., Ex. A, Docket Nos. 56-1, 56-2.)

That same day, Defendant Brown searched Plaintiff's cell and discovered two cell phones, one charger, and one altered charger. (Brown Decl. ¶ 12; Salas Decl. ¶ 8.) The cellphones had Internet, camera, and GPS capabilities. (*Id.*) Defendant Brown confiscated the items as contraband. (*Id.*) Plaintiff asserts this was Defendant Brown's first cell search as an ISU officer and was still "in training." (Smith Decl. ¶ 15.) He asserts Defendant S. Rodriguez failed to supervise his subordinates on June 29, 2016, including Defendant Brown who was "on training." (*Id.* ¶ 16.)

The Court found the complaint, liberally construed, contained sufficient facts from which to infer that Plaintiff's Fourth and Fourteenth Amendment rights were violated by Defendants Brown, Salas, Patterson, and Rodriguez, and directed Defendants to file a dispositive motion for summary judgment with respect to such claims. (Docket No. 66.)

**DISCUSSION**

Defendants have filed a motion to dismiss and motion for summary judgment. In the motion to dismiss, Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment, that the Fourteenth Amendment substantive due process claim should be dismissed as duplicative of and subsumed by the Fourth Amendment claim, and that at a minimum, Plaintiff's claim for damages from

emotional distress should be dismissed. Defendants also move for summary judgment on the merits and based on qualified immunity.

Based on a review of the record, and for the reasons stated below, the Court grants Defendants' motion to dismiss the damage claims against them in their official capacities, and the Fourteenth Amendment claim as subsumed by the Fourth Amendment claim. The Court also grants Defendants' motion for summary judgment on the merits.[6]

**MOTION TO DISMISS**

I. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the Plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). If the Court dismisses a complaint,

---

[6] Because the Court grants Defendants' motion for summary judgment on the merits, the Court finds it unnecessary to address Defendants' motion to dismiss Plaintiff's claim for emotional distress damages. (Mot. at 9-10.)

6

it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

II. <u>Analysis</u>

    A. <u>Official Capacity Claim for Damages</u>

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. (Compl. at 8.) Defendants assert that Plaintiff cannot seek damages while suing them in their official capacities because the Eleventh Amendment applies to state employees in their official capacities. (Mot. at 6.)

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.*

Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacities. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities). Defendants' motion to dismiss Plaintiff's damages claims against them in their official capacities is GRANTED, and those claims are DISMISSED with prejudice. Because it is

7

absolutely clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities is without leave to amend.

B.     Fourteenth Amendment Claim

Defendants assert that Plaintiff's Fourteenth Amendment claim should be dismissed as duplicative of and subsumed by the Fourth Amendment claim. (Mot. At 14.)

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) ("*Armendariz II*") (en banc). Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). Substantive due process must be expanded only with the greatest care and its protection is primarily reserved for liberties deeply rooted in the nation's history and tradition. *See Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) (persons who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notice requirements set forth in Alaska statute).

Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, e.g., the Takings Clause of the Fifth Amendment, that Amendment, not the more generalized notion of "substantive due process," must be used to analyze such claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Substantive due process does not extend to circumstances already addressed by other constitutional provisions. *See Albright*, 510 U.S. at 273 (constitutionality of arrest may only be challenged under Fourth Amendment); *Fontana v. Haskin*, 262 F.3d 871, 882 & n.6 (9th Cir. 2001) (sexual harassment by a police officer of criminal suspect during seizure is analyzed under Fourth

8

Amendment, whereas sexual misconduct by officer toward another generally is analyzed under substantive due process); *Armendariz II*, 75 F.3d at 1325-26 (dismissing substantive due process claim where conduct alleged is type of action regulated by Fourth and Fifth Amendments).

Plaintiff's claims arise from an allegedly unlawful strip search. The Ninth Circuit has made a distinction that the Fourth Amendment applies to the invasion of bodily privacy in prisons, *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988), and the Fourteenth Amendment applies to a pretrial detainee's right to bodily privacy. *Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) ("*Byrd II*"). At the time of the search, Plaintiff was an incarcerated prisoner. As such, his challenge to Defendants' conduct during the strip search is the type of action that is regulated by the Fourth Amendment. *See Armendariz II*, 75 F.3d at 1325-26; *Bull*, 595 F.3d at 974-75. Plaintiff does not refute this argument in his opposition, having relied solely on the Fourth Amendment to assert his claim that he was subjected to an unreasonable strip search. (Opp. at 6.) Accordingly, Defendants' motion to dismiss the Fourteenth Amendment claim is granted. Because the claim is proceeding under the Fourth Amendment, leave to amend is unnecessary.

## MOTION FOR SUMMARY JUDGMENT

I. <u>Standard of review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary

judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*

II. <u>Analysis</u>

The Fourth Amendment applies to the invasion of bodily privacy in prisons. *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests. *See Bull*, 595 F.3d at 973; *Michenfelder*, 860 F.2d at 333-34. The court also should apply the balancing test set forth in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), and consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it and the place in which it was conducted. *See Bull*, 595 F.3d at 974-75 (applying *Turner* and *Bell*); *Thompson v. Souza*, 111 F.3d 694, 699-700 (9th Cir. 1997) (same); *Michenfelder*, 860 F.2d at 332-33 (same). Put simply, the court should "consider the reasonableness of [the intrusion under *Bell*] to help [it] determine if [the intrusion] was reasonably related to legitimate penological interests [under *Turner*]." *Thompson*, 111 F.3d at 700.

Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979). The Fourth Amendment right to be secure against unreasonable searches extends to incarcerated prisoners, but the reasonableness of a particular search must be determined by reference to the prison context. *See Michenfelder*, 860 F.2d at 332. As noted above, the court should consider the reasonableness of the search under *Bell* to help it determine if the search was reasonably related to legitimate penological interests under *Turner*. *See Thompson*, 111 F.3d at 700 (finding that visual

11

strip searches and urine tests of large group of prisoners to search for drugs were reasonably related to the prison officials' legitimate penological interest in keeping drugs out of prison). The prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security in conducting a search. *See id.*

Defendants assert that after balancing test set forth in *Bell*, 441 U.S. 520, the unclothed body search did not violate Plaintiff's Fourth Amendment rights.

A.  Scope and Manner of the Search

Defendants first assert that the first two *Bell* factors, scope and the manner of the search, were reasonable. (Mot. at 12-13.) It is undisputed that the search was purely visual, and that Defendants never physically touched Plaintiff during the unclothed body search or while photographs were being taken. *See supra* at 3-4. It is also undisputed that this type of strip-search is routinely conducted in prison in order to find contraband. *Id.* at 2-3. Furthermore, as Defendants assert, it is well-established that strip searches are a legitimate and reasonable tool for maintaining security within a prison or jail. *See, e.g., Bell*, 441 U.S. at 560 (upholding policy of strip-searching inmates after every visit with a person from outside the institution); *Michenfelder*, 860 F.2d at 332-33 (approving policy of strip-searching an inmate every time he leaves or returns to the unit, as well as after movement under escort within the unit); *see also Frye v. Oleshea*, No. C 08-5288 CW, 2012 WL 951318, at *8 (N.D. Cal. Mar. 20, 2012) ("controlling contraband within a prison is a legitimate penological interest and the balance between the need for strip-searches and the invasion of personal rights that the search entails must be resolved in favor of the prison's security concerns"). As such, Defendants have shown the absence of a genuine issue of material fact with respect to whether the scope and manner of the unclothed body search were reasonable.

In opposition, Plaintiff asserts that the unclothed body search was unreasonable because it occurred in the "presence" of a female staff, i.e., Defendant Patterson. (Opp. at

6.) However, Plaintiff has made no allegation that Defendant Patterson had an unobstructed and prolonged view of Plaintiff during the unclothed body search. (Compl. Attach. at 3; Smith Decl. ¶ 8.) Rather, the declarations of Defendants Brown, Salas, and Patterson indicate that Defendant Patterson was present only to the degree that she waited outside the shower area until the unclothed body search was completed. *See supra* at 3-4. Defendant Patterson did not have a direct line of sight or an opportunity to closely observe Plaintiff while he was nude because Defendants Brown and Salas stood around him, acting like a wall, and blocking the shower area opening. *Id.* at 4. The Ninth Circuit has found that assigned positions of female guards that require only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference. *See Michenfelder*, 860 F.2d at 334; *see also Jordan v. Gardner*, 986 F.2d 1521, 1524-25 (9th Cir. 1993) (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized"); *see also Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (upholding a system of assigning female officers within a correctional facility where they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates). Here, there is no allegation that Defendant Patterson was able to make even a casual observation of Plaintiff while waiting outside the shower area. Furthermore, Plaintiff alleges that the unclothed body search was conducted to "demean and embarrass" him, (Smith Decl. ¶ 9), but it is merely a conclusory allegation and unsupported with facts that Defendant Patterson, while "present" during the strip search, had a prolonged view of him in the nude such that the experience was degrading to Plaintiff. *See Michenfelder*, 860 F.2d at 334.

In addition, the Court has viewed the photographs taken by Defendant Patterson. (Galvan Decl., Ex. A.) The exhibit includes the only photographs the ISU took of Plaintiff on June 29, 2016, following the unclothed body search. (*Id.* ¶¶ 3-4.) A review of the

photographs reveals that in all the photographs except for the ones depicting only the upper portions of Plaintiff's body, it is clear that Plaintiff is wearing boxer shorts. (*Id.*, Ex. A.) None of the pictures shows any part of Plaintiff's genitalia, and Plaintiff never claims that any fully nude pictures were taken of him.[7] Accordingly, Defendant Patterson being "present" during the brief, visual unclothed body search and taking pictures of Plaintiff in his underwear briefs for the purpose of documenting his tattoos did not render the scope and manner of the strip search unreasonable.

B. <u>Justification for the Search</u>

With respect to the third *Bell* factor, Defendants assert that the search was justified. (Mot. at 15.) It is undisputed that Defendants were acting on a tip that Plaintiff possessed a contraband cell phone, which could be used to facilitate illicit activity. *See supra* at 2. The prison has a legitimate penological interest in controlling contraband in the prison due to security concerns. *See Frye*, No. C 08-5288 CW, 2012 WL 951318, at *8. Plaintiff's allegation that he informed Defendant Patterson that "her snitches were lying to her," also corroborates the fact that the search was based on a tip. *Id.* at 3. Lastly, the fact that the cell search later yielded a contraband cell-phone, as predicted by the tip, establishes that the tip was credible. Plaintiff offers no argument in opposition.

With respect to the photographs, Defendants submit evidence that they were taken to document Plaintiff's tattoos. *See supra* at 4-5. The tattoos assist the prison in monitoring STG status and gang membership. *Id.* Plaintiff does not dispute the justifiable use of the photographs in this respect. Rather, Plaintiff argues in opposition that he has never been a member of any criminal street gang and has never been affiliated or sympathized with any STG or prison gang. (Smith Decl. ¶ 7.) Plaintiff asserts that Defendants "not once alleged" that he was a "member affiliate or sympathizer to any

---

[7] Plaintiff's claims that Defendant Patterson took "numerous sexually suggestive photographs of me and my cell mate partially nude in that public 1st tier shower area." (Compl. Attach. at 3.)

14

criminal, prison or street gang." (*Id.* ¶ 17.) Defendants assert in reply that this evidence is not a "*material* fact." (Reply at 3, original emphasis.) They assert that prison officials may inspect and document an inmate's tattoos in order to monitor whether that inmate has recently joined a gang. (*Id.* at 4.) The Court agrees that the dispute over whether or not Plaintiff was in fact a gang member at the time of the search is not material with respect to whether the photographs were justified. The photographs would document the fact that Plaintiff had no tattoos to indicate a new gang affiliation, which was the purpose of the STG status investigation.

Plaintiff also asserts that Defendant Patterson did not follow any CDCR policies consistent with an investigation or documentation of an STG on June 29, 2016, in that she failed to utilize specific forms to document her investigation. (Smith Decl. ¶¶ 12, 13.) But as Defendants point out, while prison officials may use such forms to document an inmate's STG affiliation or change in status, there is nothing that requires them to do so nor does the failure to do so mean the search was unjustified. (Reply at 4.) Plaintiff admits that there was a report written in relation to the cell, body and unclothed body search that states, "NO STG NEXUS." (Smith Decl. ¶ 14.) This is undisputed evidence that Defendant Patterson took photographs of Plaintiff in her capacity as an STG investigator and made the determination that Plaintiff had no STG affiliations at that time. As such, it cannot be said that the failure to use such forms establishes that the unclothed body search on June 29, 2016 was unjustified. Defendants have shown the absence of a genuine issue of material fact with respect to whether the search was justified.

C. Location of the Search

Lastly, Defendants assert that the location of the search was reasonable: it was conducted early in the morning, in the shower area of the prison. (Mot. at 17.) In opposition, Plaintiff asserts that the unclothed body search was not conducted in a "private place" but rather in an "unsecure, unsanitary first tier shower," and in the view of

15

numerous inmates. (Opp. at 6.) He asserts that the search could have been conducted in a holding cell. (Smith Decl. ¶ 5, 11.) Defendants argue in reply that the issue is not whether there was an alternative location where the searches were performed. (Reply at 5.) Rather, Plaintiff must establish that the showers where the search was conducted was an unreasonable location for the search. (*Id.*)

Defendants have put forth evidence that the shower area is where such searches are routinely conducted because it is more spacious than an inmate's cell and there is no direct view into the shower area as there is into a cell. *See supra* at 3. Defendants also used their bodies to shield Plaintiff from the view of passersby outside the shower while he was nude. *Id.* Furthermore, as Defendants point out, inmates are routinely nude in the shower and therefore it is reasonable to use the showering area to conduct a nude, visual search of an inmate. (Reply at 5.) Although Plaintiff asserts generally that it was "unsanitary," he fails to allege any specific facts to support this opinion. Accordingly, Defendants have shown the absence of a genuine issue of material fact with respect to the reasonableness of the location of the search.

D. Conclusion

Balancing the *Bell* factors above, the Court finds that Defendants have shown the absence of a genuine issue of material fact with respect to the reasonableness of the unclothed body search. The scope and manner and manner of the search, which was a visual, unclothed body search that lasted for approximately one minute, were reasonable. The presence of a female officer outside the showers but without a direct line of sight did not render it otherwise. The search was justified because it was based on a tip that Plaintiff was in possession of contraband which proved to be credible, and the photographs were taken for the legitimate purpose of documenting Plaintiff's STG status. Lastly, the location of the search in the shower area was reasonable because it was more spacious and private, and it was a place were inmates are routinely nude. Plaintiff has failed to meet his

16

burden of showing that Defendants intentionally used exaggerated or excessive means to enforce security in conducting the unclothed body search. *See Thompson*, 111 F.3d at 700. Accordingly, the Court concludes that the search was reasonably conducted, and that it was reasonably related to the prison's legitimate penological interest in controlling contraband to maintain institutional security. *Id.*; *see, e.g., Bell*, 441 U.S. at 560; *Michenfelder*, 860 F.2d at 332-33; *Frye*, No. C 08-5288 CW, 2012 WL 951318, at *8.

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's Fourth Amendment claim regarding an unclothed body search. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law on this claim. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

E. Supervisor Liability

Plaintiff's claim against Defendant Rodriguez is based solely on his role as a supervisor: he allegedly failed to supervise Defendant Brown's first cell search and he is responsible for Defendant Patterson's unconstitutional conduct. (Opp. at 4-6.) A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)); *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). First of all, Plaintiff does not allege that Defendant Brown's search of his cell was unconstitutional. Secondly, as Defendants point out, there is no evidence to suggest that Defendant Rodriguez was obligated to personally supervise an ordinary search of an inmate and his cell. (Reply at 2.) Furthermore, it is undisputed that Defendant Rodriguez

17

was not present during the unclothed body search, nor are there any allegations that he personally directed the actions of Defendants Brown, Salas, and Patterson. *See supra* at 3. Lastly, since the Court has determined that these subordinate officers did not violate Plaintiff's Fourth Amendment rights during the unclothed body search, it cannot be said that Defendant Rodriguez is liable as a supervisor where no constitutional violation has occurred. Because Plaintiff has failed to show that there is genuine dispute of material fact with respect to Defendant Rodriguez's involvement in the unclothed body search at issue, Defendant Rodriguez is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendants Z. Brown, S. Patterson, S. Rodriguez, and R. Salas's motion to dismiss and for summary judgment is **GRANTED**. All claims for damages against them in their official capacities are DISMISSED as barred by the Eleventh Amendment. The Fourteenth Amendment claim is DISMISSED as subsumed by the Fourth Amendment claim. The Fourth Amendment claim against them is **DISMISSED** with prejudice on the merits.[8]

This order terminates Docket No. 71.

**IT IS SO ORDERED.**

Dated: August 14, 2019

BETH LABSON FREEMAN
United States District Judge

Order Granting MTD&MSJ
PRO-SE\BLF\CR.17\04030Smith_grant.mtd&msj

---

[8] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

18